IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA

    V.                                        Case No. B-14-876-1

KEVIN LYNDEL MASSEY,

    DEFENDANT

**DEFENDANT KEVIN LYNDEL MASSEY'S OPPOSED MOTION TO DISMISS INDICTMENT**

Defendant Kevin Lyndel Massey, through his undersigned counsel, files this motion to dismiss the instant indictment and in support thereof, avers as follows:

**FACTUAL BACKGROUND**

1.    Defendant Kevin Lyndel Massey (hereinafter MASSEY), has been charged in a five (5) count indictment with four (4) counts. Count One of the indictment charges that on or about August 29, 2014, MASSEY, having been convicted on March 1, 1988 of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, that is one Springfield model XDS, .45 caliber pistol, bearing serial number XS664509, said firearm having been shipped in interstate commerce.  2.

2.    Count Two of the indictment charges that on or about August 29, 2014, MASSEY, having been convicted on March 1, 1988 of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, that is one Centurion model 39 Sporter, 7.62 x 39mm rifle, bearing serial number 39NC02585, said firearm having been shipped in interstate commerce.

3.    Count Three of the indictment charges that on or about October 20, 2014,

MASSEY, having been convicted on March 1, 1988 of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, that is one HS Produkt model XDS, .45 caliber pistol, bearing serial number XS613495, said firearm having been shipped in interstate commerce.

4. Count Four of the indictment charges that on or about October 20, 2014, MASSEY, having been convicted on March 1, 1988 of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, that is one HS Produkt model Tactical XD, .45 caliber pistol, bearing serial number US777533, said firearm having been shipped in interstate commerce. All counts in violation of Title 18, United States Code Sections 922(g)(1) and 924(a)(2).

5. All counts charge him under 18 U.S.C. § 922(g)(1) with possession of a firearm after previously being convicted of an offense which may be punishable by imprisonment for one year or more. In short, §922(g) makes it a federal crime for any person who has ever been convicted of any felony to ever possess any firearm or ammunition, inside or outside of their home. This blanket federal ban is punishable with up to 10 years imprisonment. 18 U.S.C. §924(a)(2).

6. MASSEY is a lifelong resident of the State of Texas. Pursuant to Texas Penal Code §46.04. Unlawful Possession of Firearm, (a) A person who has been convicted of a felony commits an offense if he possesses a firearm: (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives. TX PENAL § 46.04. MASSEY was within full

compliance of Texas law at all relevant times.

**UNCONSTITUTIONALITY**

7. MASSEY argues that 18 U.S.C. § 922(g)(l) is an unconstitutional infringement on his fundamental Second Amendment right to keep and bear arms because the statute is overbroad in its jurisdictional reach and selection of prohibited persons; it is based on the less-than-compelling interests of federalizing crimes already covered by state statutes and prohibiting firearm possession by categories of people who have not been deemed dangerous; and it explicitly denies similarly situated persons their fundamental rights in unequal fashion.

8. On June 28, 2008, our Supreme Court decided the case of *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008). *Heller* is commonly known as the D.C. gun ban case where the District of Columbia prohibited the possession of handguns. In rejecting the District of Columbia's ban on firearm possession, the Court held that the Second Amendment gives individuals the right to keep firearms at their home for their self-protection.

9. *Heller* is the foundation for MASSEY's request to dismiss the indictment because, as applied, §922(g) is unconstitutional. What led to MASSEY's indictment was the search of a vehicle MASSEY had driven on August 29, 2014 and a search of an apartment where MASSEY was living in October 2014. At the apartment, one of the guns was found on MASSEY but there was no valid arrest or search warrant. Although the Court mentioned with implicit approval, certain "longstanding prohibitions on the possession of firearms by felons and the mentally ill," 128 S. Ct. at 2783, the Court came nowhere near upholding those prohibitions. Instead the Court acknowledged that Heller "represents [the] Court's first in-depth examination of the Second Amendment," and disclaimed any intent to settle all questions that would arise in future cases, stating that there would be "time enough to expound upon the historical

justifications for the exceptions we have mentioned if and when those exceptions come before [the Court]." *Id*. at 2821.

10. It is MASSEY's position that it is his Second Amendment right to possess those items in his home and any prosecution based on those items would violate his constitutional rights under the Second Amendment.

11. The Second Amendment provides, in full, as follows: "A well regulated militia, being necessary to the security of a free state, the rights of the people to keep and bear arms, shall not be infringed." The phrase "the people" in the Second Amendment must mean the same as in other Amendments such as the 1st, 4th, and 9th. Despite having a conviction history, MASSEY still has a right to free speech, he still has the right to exercise whatever religion he believes in, and the 4th Amendment speaks to the right of the people to secure their persons, houses, papers, and effects against unreasonable search and seizures. The Supreme Court has not even come close to saying that, once you are convicted of a federally defined felony, you cannot assert a 4th Amendment right. Even *Sampson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed 2d 250 (2006), holds that searches of prisoners and parolees can be reasonable even without individualized suspicion, this ruling is a far cry from suggesting that a convicted felon is not a person who does not have any 4th Amendment rights. *Heller* holds that all "Americans" have a right of a firearm for self-defense. Congress is not able to take this right away. Individuals similarly situated like MASSEY, have a need and right to protect themselves and their families just as much as anyone else. The present indictment would deny MASSEY the ability to exercise this rights under out Constitution.

**THE COMMERCE CLAUSE**

12. The interstate commerce nexus and the government's interest in preventing

firearm ownership are not "compelling" The question of the intersection of the Second Amendment and the Commerce Clause is one of first impression. Courts have previously read § 922(g)(1) to be a jurisdictional blank check; even a minimal, remote, and distant tie with interstate commerce now suffices to invoke full Congressional power to act under the Commerce Clause. See, e.g., *Scarborough v. United States*, 431 U.S. 563 (1977). But that analysis has taken place in a virtual vacuum, bereft of analysis of the implications of the fundamental right to bear arms. While the Second Amendment and the Commerce Clause have intersected before, they have never been combined under the guise of a direct challenge by one (or both) of the parties. In *United States v. Printz,* 521 U.S. 898 (1996) Justice Thomas observed that, "if…the Second Amendment is read to confer a personal right to "keep and bear arms," a colorable argument exists that the federal government's regulatory scheme, at least as it pertains to the purely intrastate sale or possession of firearms, runs afoul of the amendment's protections." Id. at 938 (Thomas, J., concurring) (emphasis added). Thus, Justice Thomas must view the broad Congressional regulation of intrastate firearms possession as suspect, given the fundamental, individual right to possess a firearm guaranteed by the Second Amendment. In a case preceding *Heller*, the Fifth Circuit Court of Appeals intimated that the right to bear arms, though it had not been raised by the parties, colored the commerce test that was applied to strike down the Gun Free School Zones Act, 18 U.S.C. § 922(q): "*Lopez* does not raise the Second Amendment and thus we do not now consider it. Nevertheless, this orphan of the Bill of Rights may be something of a brooding omnipresence here." *United States v. Lopez*, 2 F.3d 1342, 1364 n.46 (5th Cir. 1993), aff'd, 514 U.S. 549 (1995).

      13.    Admittedly, the federal courts have thus far upheld Section 922(g)(1) as a constitutional exercise of Congress's Commerce power. See, e.g., *United States v. Wells*, 98 F.3d

808, 810-11 (4th Cir. 1996). The Supreme Court, however, has repeatedly insisted that there must be a "substantial" effect on interstate commerce to warrant federal intervention in what is normally a local matter. *United States v. Jones*, 529 U.S. 848 (2000); *United States v. Morrisson*, 529 U.S. 598 (2000); *United States v. Lopez*, 514 U.S. 549 (1995). A number of judges have recognized that the Supreme Court's landmark decision in *Lopez* affords defendants "a powerful argument" that 18 U.S.C. § 922(g) operates unconstitutionally in a case where the only interstate commerce nexus is the mere fact that firearms at some point traveled interstate. See *United States v. Kuban*, 94 F.3d 971, 973 n.4 (5th Cir. 1996), cert. denied, 519 U.S. 1070 (1997); *United States v. Rawls*, 85 F.3d 240, 243-44 (5th Cir. 1996) (Garwood, J., specially concurring, joined by Wiener & E. Garza, JJ.)); *United States v. Chesney*, 86 F.3d 564, 574-82 (6th Cir. 1996) (Batchelder, J., concurring), cert. denied, 520 U.S. 1282 (1997). The mere allegation that the gun was manufactured outside of the state of possession is insufficient to confer federal jurisdiction in this case. Any possession by MASSEY does not constitute commerce. If admitted the possession would not be an issue because if the gun was manufactured in Texas. There would be no charges. The interstate commerce began and ended with the Federal Firearm License dealers involved. After the importation into Texas the guns are under Texas jurisdiction. Thus the laws of Texas apply not the federal government.

**EQUAL PROTECTION CLAUSE**

14. A law is subject to strict scrutiny and may violate equal protection rights if it unevenly burdens a fundamental right or targets a suspect class. See, e.g., *Heller v. Doe*, 509 U.S. 312, 319 (1993); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439-40 (1985). The guarantee of equal protection contained within the Fifth and Fourteenth Amendments to the United States Constitution mandates that:

> [E]qual protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights;…that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that, in the administration of criminal justice, no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses. *Yick Wo v. Hopkins*, 118 U.S. 356, 367-68 (1886) (internal quotations omitted).

15.     18 U.S.C. § 922(g)(1) treats individuals in like circumstances very differently "in the enjoyment of their personal and civil rights" and in the "administration of criminal justice." This result is an inevitable product of this statute: § 922(g)(1) contains no uniform definition of the conduct that will result in a loss of the right to possess firearms under federal law, instead relying on diverse state definitions. The statute therefore burdens a fundamental right in explicitly unequal terms. Conviction of a crime punishable by more than one year nullifies one's right to keep and bear arms under federal law, but "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(2).  By incorporating inconsistent state laws, the federal law is facially unequal. Only by virtue of the great deference arising from rationality review have these patently unequal statutes have been upheld.  As noted above, the Supreme Court's prior holding, in *Lewis v. United States*, 445 U.S. 55 (1980), that the felon-in-possession statute need only survive "rational basis" scrutiny has been disapproved by *Heller*. See *Heller*, 128 S. Ct. at 2817 n.27.  It is clear that strict scrutiny applies and a law that sweeps so widely cannot be considered "necessary to promote a compelling government interest."

16.     By incorporating restoration of rights schemes from different states, "Congress superimposed a patchwork of state law over a broad piece of federal legislation in a manner bound to produce anomalous results." *McGrath v. United States*, 60 F.3d 1005, 1009 (2d Cir.

1995).

**WHEREFORE**, MASSEY is charged with possessing a firearm which he allegedly kept for self-defense and for no other purpose, nefarious or otherwise. 18 U.S.C. § 922(g), a statute bearing only a tenuous relationship with the interstate commerce power upon which it rests, purports to take away from MASSEY his right to bear arms in self-defense – a fundamental right guaranteed by the Second Amendment – in violation of that amendment, the Fifth Amendment's Due Process clause, and the Due Process clause's Equal Protection component.  Since 18 U.S.C. § 922(g) is therefore unconstitutional, MASSEY asks that this Court dismiss the instant indictment.

Signed: February 19, 2015

Respectfully Submitted,

_____/s/_____
Louis S. Sorola
Texas State Bar Number:  00794990
Fed. I.D. 19533
1999 W. Jefferson
Brownsville, Texas 78520
Telephone:  (956) 504-2911
Fax:  (956) 544-7766

Attorney for the Defendant,
Kevin Lyndel Massey

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the Defendant Kevin Lyndel Massey's Motion to Dismiss Indictment was electronically sent to William Hagan, Assistant United States Attorney on the 19th day of February, 2015.

_____/s/_____
Louis S. Sorola

8

## **CERTIFICATE OF CONFERENCE**

I certify that I conferred with Mr. William Hagan, Assistant United States Attorney on the 2nd day of February, 2015 and he is opposed to this Motion.

_____/s/_____
Louis S. Sorola

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA

V.  Case No. B-14-876-1

KEVIN LYNDEL MASSEY,

DEFENDANT

**ORDER ON DEFENDANT KEVIN LYNDAL MASSEY'S OPPOSED MOTION TO DISMISS**

Defendant Kevin Lyndel Massey's Motion to Dismiss is hereby:

_____  GRANTED

_____  DENIED

Signed in Brownsville, Texas on this the \_\_\_\_\_day of _____, 2015.

_____
Andrew S, Hanen
United States District Judge