IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| vs. | § | CRIM. NO. B-14-876-01 |
| KEVIN LYNDEL MASSEY | § | |

## GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS AND MOTION TO DISMISS INDICTMNT

### FACTS

Kevin Lyndel Massey, defendant, is a resident of Quinlan, TX. Defendant is a convicted felon having been twice convicted of Burglary of a Habitation in violation of Texas Penal Code section 30.02. Defendant was sentenced to five years imprisonment on March 1, 1988 in Cause Nos. F85-92081 and F88-77912 in the 265th Judicial District Court of Dallas County, Texas.

Defendant left his home and traveled to Cameron County, Texas during the Summer of 2014. While in Cameron County, the defendant was part of a group of citizens that conducted armed patrols along the international border between Mexico and the United States. The purpose of the group is to patrol the border and discourage illegal immigration. The group refers to themselves as "Rustys Regulators" or "Rusty's Rangers". Defendant rented a room at the Value Inn motel in Brownsville, Texas. Records from the Value Inn indicate occupancy from August of 2014 and payment though November 10, 2014. Defendant was arrested on October 20, 2014 at the Value Inn.

On August 29, 2014 defendant and other members of Rusty's Rangers were on patrol near the Sabal Palm sanctuary in Cameron County, Texas. The area patrolled is private property located on the banks of the Rio Grande River. During the patrol, United States Border Patrol

agents encountered defendant and other members of his group who were armed with handguns and rifles. John Frederick Foerster, co-defendant and member of Rusty's Rangers, was patrolling with defendant.

BP agent, Marcos Gonzales, was pursuing a group of illegal aliens when he encountered an armed Foerster in heavy brush. BP agent Gonzales perceived Foerster as an armed and immediate threat when Forester pointed the weapon he was carrying at Gonzales who was emerging from the brush. Gonzales fired four or five shots which did not strike Foerster. Foerster was armed with 7.62X39mm pistol which contained a vertical fore grip and was slung around his neck. The shots were fired at approximately 3:45 P.M.

Senior Border Patrol agent Danny Cantu was nearby, heard the shots and secured the scene for investigation by Federal and/or State law enforcement. Cantu was not certain if the shooting was on State or Federal land and contacted the Federal Bureau of Investigations and the Cameron County Sheriff's Office. Cantu requested Foerster to accompany him away from the river bank to an open area, "staging area"', approximately 100 yard away. Foerster was angry and wanted to fight BP agent Gonzales. Defendant, Massey, wanted to leave the area. Cantu told Massey all members of his group must remain until shooting was investigated. Cantu requested that all members of Rusty's Rangers disarm while the investigation was conducted. Massey turned over a handgun and rifle which was secured in a Border Patrol vehicle during the investigation. Foerster relinquished the pistol he was carrying and the third member of Rusty's Rangers relinquished a pistol and a rifle. The weapons were all secured in a Border Patrol vehicle.

CCSO investigators and FBI arrived at the scene. CCSO at approximately 4:19 PM and FBI arrived at 5:15 PM. Witnesses to the shooting, civilian and law enforcement, were identified and interviewed by State and Federal authorities. An Agent with United States Fish and Wildlife utilized a GPS device to determine the shooting was on private property. The site of the shooting was processed and four spent shell casings were recovered.

During the investigation criminal histories were requested that indicated that Massey and Forester had felony convictions. The pistol carried by Forester was believed to be a prohibited weapon due to the addition of the fore grip. CCSO officials decided to keep possession of the weapons pending further investigation. Massey and Forester were allowed to leave the scene and all officials departed by 7:00 PM. Massey was not provided Miranda warnings during the investigation. Massey was never handcuffed and cooperated in surrendering his weapons and providing statements.

Agents with BATF joined the investigation and arrested Massey outside the Value Inn on October 21, 2014 for possession of a firearm by a felon. The arrest was pursuant to an arrest warrant issued by United States Magistrate Judge Ronald G. Morgan. Defendant, Massey was carrying a .45 caliber pistol when arrested.

Following Massey's arrest, BATF agents obtained a search warrant from United States Magistrate Judge Ronald G. Morgan and searched the room occupied by Massey. An additional .45 caliber pistol was discovered in defendant's motel room.

### ARGUMENT CONCERNING SEIZURE OF WEAPONS AND STATEMENTS OBTAINED ON AUGUST 29, 2014

It was reasonable for BPA Cantu to disarm Massey and tell him he could not leave the area where the shooting occurred. Police are allowed to stop and briefly detain persons for

investigative purposes if the police have a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 30 (1968). BPA Cantu was responding to gunshots he heard in an area where fellow agents were pursuing illegal aliens. When Cantu arrived at the site of the shooting he was told that Forester had been fired upon as a result of Forester pointing his pistol at BPA Gonzales. BPA Cantu observed that Forester was armed and angry wanting to "box" BPA Gonzales. Defendant, Massey and one other member of Rusty's Rangers were in the immediate area of the shooting. Massey and the third member were obviously armed each carrying a rifle and wearing a sidearm. It was reasonable for BPA Cantu to request that Massey and his companions disarm pending investigation into the events that precipitated the shooting. "If an officer develops-----and is able to articulate-----reasonable grounds to believe that a suspect is armed and presently dangerous to the officer, third parties, or himself, the officer may "take swift measures to discover the true facts and neutralize the threat of harm if it materialized." *United States v. Sanders,* 994 F.2d 200,203 (5th Cir.1993)(quoting *Terry*, 392 U.S. at 30). To determine if an investigative detention is reasonable common sense and ordinary human experience must govern over rigid criteria. *U.S. v. Sharpe,* 470 U.S. 675,685 (1985).

The CCSO properly took possession of Massey's weapons and continued his detention. Members of the CCSO had immediate reason to believe that Massey may have committed several crimes in violation of Texas law.

        Texas Penal Code Section 46.02 Unlawfully Carrying Weapons

> (a) A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club if the person is not:

> (1) On the person's own premises or premises under the person's control

Texas Penal Code Section 46.04 Unlawful Possession of Firearm
> (a) A person who has been convicted of a felony commits an offense if he possess a firearm:
>
> (1) After conviction and before the fifth anniversary of the persons release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or
>
> (2) After the period described by Subdivision (1), at any location other than the premises at which the person lives.

The CCSO was informed by Border Patrol agents about the shooting and the seizure of weapons. CCSO deputies made the decision to maintain custody of the weapons after it was revealed that Massey had provided Forester a weapon and that Massey and Forester both had criminal histories that included felony convictions.

Agents with BATF later obtained copies of and verified Massey's burglary convictions and established that the firearms in question had traveled in interstate commerce. An arrest warrant was obtained and Massey was arrested.

## **STATEMENTS**

Statements obtained from Massey were not the product of custodial interrogation. Massey was never handcuffed, placed in a police vehicle or moved away from the staging area. Massey was interviewed by an FBI agent for approximately 35-40 minutes. Massy was not arrested and was allowed to leave the area as soon as questioning concluded. The questioning

took place on the side of a dirt road. Massey was cooperative during questioning and agreed to answer most of the questions asked of him. Massey did not want to provide his social security number and the FBI agent agreed he did not have to provide the number. Massy and the FBI agent were cordial to one another with Massy indicating he appreciated the need to ask questions because he knew law enforcement officers. Massey was not the focal point of the investigation; agents were primarily concerned with circumstances surrounding the shooting between Forester and BPA Gonzales.

Custody for Miranda purposes requires a greater restraint on freedom than seizure under the fourth amendment. *United States v. Cavazos,* 668 F.3d 190,193 (5th Cir. 2012). "A suspect is … 'in custody' for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. *United States v. Begivanga,* 845 F.2d 593, 596 (5th Cir. 1988). In the instant case Massey was told, By BPA Cantu, to remain in the staging area while the shooting was investigated. Massey was allowed to leave after he was questioned. Massey was never in custody.

## MOTION TO DISMISS INDICTMENT

Defendant seeks dismissal of the indictment and relies on *District of Columbia v. Heller,* 554 U.S. 570 (2008). Defendant's arguments are misplaced. In this case the defendant was carrying weapons on his person away from his home after having been convicted of two felony offenses. Defendant is charged with violations of Title 18 U.S.C. 922(g)(1). Pursuant to *United States v. Daugherty,* 264 F 3.d 513, 517-18 (5th Cir. 2001), Massey is still a convicted felon and is prohibited from possessing a firearm. The Fifth Circuit recently stated in *United States v.*

*Rodriguez,* 590 F.Appx. 430 (5th Cir. 2015), that *Daugherty's* holding was not undermined by *Heller.*

The defendant's Motion To Suppress and Motion To Dismiss Indictment should be denied.

                                        Respectfully submitted,

                                        KENNETH MAGIDSON
                                        United States Attorney

By:   *s/ William Hagen*
        WILLIAM HAGEN
        Assistant U.S. Attorney
        Fed. Bar No. 28261
        Texas Bar No. 08688600
        600 E. Harrison St, #201
        Brownsville, TX 78520
        Tel: (956) 548-2554 / Fax: (956) 548-2711

## CERTIFICATE OF SERVICE

I, hereby certify that on the 5th day of March, 2015, a copy of the Government's response was electronically sent to Louis S. Sorola, Attorney for defendant.

                                        *s/William Hagen*
                                        WILLIAM HAGEN
                                        Special Assistant U.S. Attorney